### MIRICK vs. BASHFORD.

After an agreement by a landlord to repair is broken, it becomes a chose in action in the tenant's favor, upon which he can maintain an action against the landlord.

If a grantee in fee of the landlord refuses to recognize any liability to repair, and the tenant, with notice of such refusal, attorns to him and pays him rent, the grantee is not liable on the landlord's contract to repair, if such contract was broken, and the landlord's liability for the breach was complete, before the grantee had acquired any legal estate in the premises.

If, after a purchaser from the landlord, has repudiated the landlord's cove nant to repair, and refused to perform it, the tenant, avowing his intention to hold the lessor upon his covenant, continues in possession of the prem ises, attorning to the purchaser, by the payment of rent, without objection, as it becomes due, this will be held to be evidence, *prima facie*, at least, of a waiver by the tenant of any claim upon the purchaser, on the landlord's covenant to repair.

APPEAL from a judgment entered on the report of a referee. The action was upon a lease, to recover a quarter's rent. Defense, a breach of a provision in the lease for repairs, &c. whereby the defendant has sustained damages, which he claims should be allowed him, by way of recoupment. The following facts were found by the referee: In the spring of 1858 Daniel Chapman purchased the warehouse and premises in the complaint mentioned, of Wells & Dewey. At that time the defendant occupied the premises, under a written lease from Wells & Dewey, for one year from May 1, 1858, with an additional ten days after the opening of canal navigation in the spring of 1859, in which to remove and ship his grain in store. He was to pay a rent of $250, payable quarterly. The defendant attorned to Chapman, by the consent of his landlords, and the tenant occupied and paid the rent to Chapman, to May 1, 1859. In February or March, 1859, the defendant and Chapman made a new verbal agreement that the defendant should occupy the lot and warehouse a year from May 1, 1859, and ten days after the opening of canal navigation in the spring of 1860, to get out and ship his grain in store, on the same terms as contained in the written lease; and also that Chapman would

immediately make such improvements in the warehouse as the defendant should direct, for ten per cent on the cost thereof, as rent of such repairs, which the defendant agreed to pay. In pursuance of this agreement, Chapman, on the 18th of March, 1859, sent a carpenter to make the repairs, who commenced preparations therefor, and could have completed them by the 1st of May, at an expense of about $500. Soon thereafter, and before any actual repairs were made, Chapman, by parol, contracted to sell and convey the premises to the plaintiff, subject to the lease, making no mention of the contract to repair or improve the warehouse. Immediately on making this contract, Chapman declined to make any repairs, and withdrew his carpenter from the work, because he had contracted to sell. On the 26th of April, 1859, Chapman and his wife conveyed the premises to the plaintiff, by deed. No mention was made in the deed, or in any instrument in writing, of the letting of the premises to the defendant. The referee found as a matter of fact that by the verbal contract to take the land subject to the lease, the plaintiff understood the rent to be as the warehouse then was, and Chapman intended, subject to that rent. On the 1st of May, 1859, the plaintiff informed the defendant that he had purchased the premises of Chapman; that the agreement was that the defendant was to have them a year longer; and desired to know if he wanted them. The defendant informed him that he did want them, and had rented them of Chapman for one year from May 1, 1859, and that he should not make any contract with the plaintiff to interfere with his contract with Chapman. That Chapman had agreed to repair, and if he did not repair, he, the defendant, would hold him (Chapman) for damages. The plaintiff replied he should not repair, and knew nothing of such a contract. These statements were found by the referee to be not merely statements of the parties, but facts in the action. The defendant thereupon occupied under the plaintiff, as his landlord, and regularly, and without any objection or condition,

Mirick *v.* Bashford.

paid him three quarters' rent as they successively fell due. No repairs were made, and the last quarter's rent remained wholly unpaid. The repairs would have cost $500, and the increased yearly rent of the demised claimed premises would thereby have been $125.

On these facts the referee found, as conclusions of law, that the contract for repairs was broken by Chapman, before he conveyed to the plaintiff. That on the execution of the deed, the agreement to repair was not running with the land, but, having been broken, was a chose in action, only. That only the reversion and the rent passed to the plaintiff by the deed, and not the chose in action. That the contract to repair had not been assigned to the plaintiff, and was a contract personal to Chapman, at the date of the deed. That the defendant elected to occupy under the plaintiff, and attorned to him by the consent of Chapman, with notice to the plaintiff by the defendant that he, the defendant, should not waive his right of action against Chapman for damages for a breach of his contract to repair. That the plaintiff had not incurred any liability to the defendant available as a defense in this action; and that the plaintiff was entitled to recover the last quarter's rent, at the rate of $250 per annum, with interest. Judgment was entered accordingly.

*T. R. Strong,* for the appellant.

*J. T. McKenzie,* for the respondent.

*By the Court,* WELLES, J. The contract made by Chapman with the defendant, to repair the warehouse, was broken by the former before he conveyed to the plaintiff. This contract was made in February or March, 1859, and while the defendant was in possession under a verbal lease from Chapman, which would expire on the 1st of May thereafter, and by it the repairs were to be made immediately, so that the defendant could enjoy the benefit of them during the year commencing May 1, 1860. Chapman accordingly employed

Pickett, the carpenter, to make the repairs, who commenced the work in March, 1859. Afterwards, and in the same month of March, and before he conveyed the premises to the plaintiff, but after he had agreed by parol to do so, he ordered Pickett to quit the work. Pickett accordingly quit the work, and during the same month told the defendant that Chapman had sold out, and that he was ordered to discontinue the work. There can be no doubt, from the evidence, that Chapman refused to make the repairs in consequence of his agreement to sell to the plaintiff. The repairs were never resumed or made, but were distinctly abandoned by Chapman. On the 26th of April, 1859, Chapman and wife conveyed the premises to the plaintiff. . Chapman's agreement to repair being thus broken, it became a chose in action in the defendant's favor, against Chapman, for which he could have maintained his action, after the 1st of May, 1859. On that day the plaintiff or his agent refused to recognize any liability to repair, and the defendant, with notice of such refusal, attorned to the plaintiff, and paid him the first three quarters' rent promptly, as they became due. On the 1st day of May, 1860, the defendant was about to give his check for the last quarter's rent, but remarked to the plaintiff that he might want a few days to get his grain out and ship it. Whereupon the plaintiff proposed to wait until the end of the term, and settle it then; to which the defendant readily and unconditionally assented.

It seems to me, under the facts found by the referee, that the plaintiff is not liable on Chapman's contract to repair, for the reason that the contract was broken before the latter conveyed to the former, and Chapman's liability for the breach was complete before the plaintiff had acquired any legal estate or claim to the premises, and did not therefore legally attach itself to the plaintiff as grantee of the fee, by the deed from Chapman.

But if any doubt exists, as to this proposition, there is another view which leaves no doubt on the subject. The

plaintiff, on the 1st day of May, 1859, called on the defend-ant at the demised premises, and informed him that he had purchased the premises of Chapman, and desired to know if the defendant wanted them another year. The defendant replied that he did want them, and had rented them of Chapman for one year from May 1, 1859, and should not make any contract with the plaintiff to interfere with his contract with Chapman. That Chapman had agreed to re-pair, and if he did not, the defendant would hold him (Chap-man) for damages. The plaintiff replied he should not repair, and knew nothing of such a contract. Here was a distinct repudiation by the plaintiff of Chapman's contract to repair, after which the defendant continued in possession for the whole of the ensuing year, attorning to the plaintiff by the payment of rent as it became due, without objection, except the last quarter, and then agreed to pay that as soon as he could get his grain shipped, as before stated. This, it seems to me, is clear evidence, *prima facie*, at least, of a waiver by the defendant of any claim upon the plaintiff on Chap-man's agreement to repair.

For the foregoing reasons, I think the judgment should be affirmed.

Judgment affirmed.

[MONROE GENERAL TERM, September 1, 1862. *Johnson, J. C. Smith* and *Welles,* Justices.]