OSCAR V. GERZEBEK AND WIFE v. JOHN LORD AND WIL-
LIAM REDMOND.

1. A covenant by the landlord to do certain repairs, which are specified, will not run with the land after breach.
2. Where certain repairs are agreed to be done "during the tenancy," no certain time being indicated, a notice to perform from the tenant is requisite to put the landlord in default.
3. A declaration against the assignee of the reversion, founded on a covenant of the lessor to repair, during the term, must aver that such repairs were not done before the conveyance to the defendant; the allegation of such fact, by way of *protestando*, is not sufficient.

---

This was a suit in covenant on a lease. The wife of the plaintiff before her marriage was the lessee, and Cadwallader Sellers was the lessor and owner of the property. The lease was dated the 19th of March, 1864, and the covenant sued on was stated in the declaration in these words, viz.: "And the said Cadwallader Sellers did, in and by said indenture of lease, covenant, promise, and agree, in consideration, &c., to give said house one coat of paint, inside and out, to repair and cleanse the walls inside, and also, during the term of said lease, to repair the water pipes and water closets, and do all

other necessary repairs to make the property in a good and tenantable condition." The declaration then showed a conveyance on the 19th May, 1866, by Sellers, the lessor, of the premises in fee, subject to the lease, to the defendants. The breaches were assigned in these words, viz., "Yet protesting that the said Cadwallader Sellers did not before, nor hath the said defendants since the said conveyance by the said Cadwallader Sellers to the said defendants of the said land and premises, &c., fulfilled or kept any of the covenants in the said indenture of lease contained, on their part and behalf as aforesaid, to be performed, fulfilled and kept, according to the tenor and effect, true intent and meaning of the said indenture of lease. The said plaintiffs in fact say, that said defendants have not, since said conveyance of said lands and premises to them by said Cadwallader Sellers, as aforesaid, kept said covenant so made by said Cadwallader Sellers with said plaintiff, &c., to give said house one coat of paint, inside and out, to repair and cleanse the walls inside, and, during said term, to repair the water pipes and water closets, and walls, and to do all necessary repairs to make said property in a good and tenantable condition, or any part thereof, but so to do have wholly neglected and refused, although often requested so to do, and although said property, to wit, the said house and said water pipes, water closets and walls have, during all the time since said conveyance by said Cadwallader Sellers to said defendants, been and remained, by reason of the same being out of repair by reason thereof, in an untenantable condition, to the damage," &c.

The defendants demurred, having craved oyer and set out lease.

For plaintiffs, *Theodore Runyon.*

For defendants, *C. Parker.*

BEASLEY, CHIEF JUSTICE. This is a suit by the lessee against the assignee of the reversion, and the controverted

point is not so much whether the covenants of the lease have been broken, as whether they have been broken under such conditions as to throw a liability on the defendants. As a general rule, covenants relating to repairs become appurtenant to the premises demised and run with them. This is embraced in the first resolution in *Spencer's Case*, 3 *Coke* 16, and has been unquestioned law from that day to this. The question, therefore, which now presents itself is, whether there is any peculiarity in these covenants, or in their concomitant circumstances, which saves these defendants from liability by force of the facts stated in these pleadings.

From an attentive consideration of this lease, I think the covenants sued on must be distributed into two classes, differing in important respects. The words used are these: " The said Cadwallader Sellers agrees to give said house one coat of paint inside and out, to repair and cleanse the walls inside, and also during the term of lease, to repair the water pipes and water closets, walls, and do all other necessary repairs, to make the property in a good and tenantable condition."

Now it seems to me clear that all these repairs do not stand in the same range; there is a plain mark of distinction upon them, viz., they are to be done at different times. To the doing of the first class, that is, the painting and repairing and cleansing the walls inside, no time is annexed; but the others are additional, and are to be done "during the term of lease." Nor is there anything surprising in this feature of this agreement, for it is obvious that the acts to be done, and which are comprised in what I have denominated the first class of these covenants, are such as naturally and usually accompany the entrance of the tenant upon leased property. The giving the house one coat of paint, and the reparation and cleansing of the walls inside were acts preparatory to the occupation by the lessee; the residue of the repairs were to be done at some subsequent period during the currency of the five years of the tenancy. These two classes of covenants are subject, in their connection with

Gerzebek et ux v. Lord and Redmond.

the facts of this case, to the application of distinct legal principles, and on this account will receive a separate consideration.

To begin, then, with the first class—those which constituted the landlord's preparation for the occupation of the tenant. With regard to these, it has already been said, no time for performance was fixed. Consequently, by force of the ordinary legal rule, these repairs were to be done in a reasonable time. The lease was dated on the 19th March, 1864, and the term commenced the following April. It was over two years before Sellers, the lessor, conveyed the premises to the defendants. There can be no question, therefore, that this covenant was broken before the reversion came to the defendants. The point is, will this suit, for this breach, lie against them?

The rule of law upon this subject may be thus generalized from the authorities, viz., that where a covenant touching the demised premises requires the performance of a single act, or a series of cotemporaneous acts, and not the performance of acts at different times, such covenant will not run with the land after breach. The distinction is between such covenants as are entire, and such as are of a continuing nature. Thus a covenant to pay rent at a given time, belongs to the former category; a covenant to do repairs from time to time, upon notice, is to be classed in the latter. The only practical difficulty is, to discriminate, in all cases, the one class from the other. The general rule, that subsequent to a breach a covenant will not run with the land, seems completely established. A leading case is that of *Grescot* v. *Green*, 1 *Salk.* 199, in which a lessee covenanted for himself and his assigns to rebuild and finish a house *within* such a time, and after that time he assigned, the house not being built and finished; and, Holt, Chief Justice, said : " This covenant shall not bind the assignee; because it was broken before the assignment; *aliter* if broken after; as if the lessee had assigned before the time expired." The doctrine of this case is approved of, and followed by Lord Mansfield

in *Church Wardens, &c.,* v. *Smith,* 3 *Burr.* 1271 ; 1 *Black.* 351. The following are also decisions resting on the same footing : *Crane* v. *Batten,* 28 *E. L. & Eq.* 137 ; *Johnson* v. *The Church Wardens, &c.,* 4 *Adolph. & El.* 520 ; *Hawkens* v. *Sherman,* 3 *Carr. & P.* 459 ; *Day* v. *Swackhamer,* 2 *Hilton* 2 ; *Mireck* v. *Bashford,* 38 *Barb.* 191 ; *Hentze* v. *Thomas,* 7 *Md.* 346.

It will be perceived that the case, above cited, decided by Lord Holt, is closely analogous to the present. The only difference being that, in the former, the acts of reparation were to be done within a fixed period. But this circumstance is immaterial with respect to the legal principle involved. In the case before us the covenant under consideration was as plainly broken before the title came to the defendants as it would have been if its performance had been required to be in a month from the date of the lease. After the lapse of two years no question of this kind can be mooted. The precedent, therefore, of *Grescot* v. *Green,* is strictly applicable. And with regard to the entirety and completeness of a breach of a covenant of this character, the case of *Stuyvesant* v. *The Mayor, &c., of New York,* 11 *Paige* 414, may be profitably referred to: There the city of New York covenanted to inclose and improve lands granted to the corporation, and Chancellor Walworth held that this was not a continuing covenant, but one to be performed within a reasonable time, and when once broken was entirely broken.

From these determinations the plain result would seem to be that the covenant in the present instance has no quality which gives it continuance after a breach, and that when once broken, it could not go as a liability attending the land into the hands of the defendants. The remedy of the plaintiffs for a breach of the covenants of this first class was againt Sellers, the covenantor, and not against his assignees. The plaintiffs' case, therefore, fails as to this first ground.

*Second.* The remaining covenants embraced in this suit are comprised in this clause of the lease : "And also during the term of lease to repair the water pipes and water closets,

walls, and do all other necessary repairs to make the property in a good and tenantable condition." It is obvious that this is not a stipulation to keep the premises in repair. The term "*make* the property in a good and tenantable condition," is equivalent to an agreement to *put* them in that state. Such a covenant would be satisfied by a single performance. So a refusal on a single occasion to perform would be an entire breach. It would be doing great violence to the terms used, to hold that after the landlord had, once during the term, repaired the pipes and walls, and had done everything to make the property tenantable, he could be again called upon to repair, by force of this contract. I do not regard the language which is used as at all obscure on this head. It is likewise clear that this covenant, until after breach, will run with the land. It becomes necessary, therefore, to decide when a breach will occur. The lessor is to put the premises in repair "during the term;" but when during the term? For an answer to this inquiry, we must look at the nature of the contract. From the character of the transaction and the position of the parties, I think it was the evident intention that this act of the landlord was to be done upon notice on the part of the tenant. This construction is the most beneficial to the lessee, and the contract is to be taken most strongly against the covenantor. It is not to be presumed that the landlord was to have the right at any time to force an entrance upon the occupation of the tenant with a view to making reparations. Such a power could only be justly claimed by virtue of an express reservation to that effect. Besides, in this case how was the lessor to know that the water pipes or other parts of the premises were out of repair? There is no provision that he may enter and view the property, and for him to do so would have been a trespass. This is not a case where each of the contracting parties has equal facilities of information. The rule is that notice to perform is necessary whenever the fact, on the occurrence of which the right to claim performance depends, lies more peculiarly within the knowledge of one of

the parties than the other.  *Chit. on Cont.* 732.  With reference to the state of these demised premises, the tenant possessed the advantage of position, and he was, consequently, bound, if he wished them repaired, to request performance of the covenant in question.  The result is, that until such notice there could be no breach, and under such circumstances, the liability to perform the covenant would pass with the reversion.  If the performance of this contract was never claimed by Sellers, the lessor, while he remained the owner, the plaintiffs, after the reversion had vested in the defendants, had a right to demand of them the reparation of the property.  A refusal on the part of the defendants to comply with such demand would have formed a proper groundwork for this action.  But these essential facts do not appear, with any legal propriety, in this declaration.  For, first, it is not shown that this covenant was not performed, in point of fact, by Sellers.  The only intimation with regard to such matter, is to be found in a protestation that he did not do these repairs.  But this is not an issuable averment against the fact.  By virtue of this formula, which the plaintiffs have used, no issue could be raised on the point.  It is the well known rule of pleading, that a *protestando* has no effect upon the suit into which it is introduced, its only office being to preserve, under certain circumstances, to the party using it, the liberty of disputing, on any other occasion, the truth of the matter protested against.  1 *Chit. Pl.* 650.  This is a fatal defect in this pleading.

As to the other objection which was taken in the brief of counsel, that it is not alleged that any request was made of the defendants to do the repairs in question, the conclusive answer is, that this imperfection cannot be taken advantage of on general demurrer.  Unquestionably, this declaration is defective in this particular, in point of form.  A notice to perform the covenant in question, it has been already stated, is regarded as a condition precedent to a right of action, and such notice should therefore be formally stated, with time and place.  Instead of this, we have here but the common

allegation, *licet sæpius requisitus.* Such an averment, when a special request was necessary, has repeatedly been held to be bad as a matter of form, and, on a motion to strike out this part of the declaration, the objection might have p̶ ...led. But the better opinion would seem to be, although the point has been in doubt, that the defect can only be brought in question by special demurrer. 1 *Chit.* 362 ; *Bowdell* v. *Parsons,* 10 *East* 359. As this record stands, therefore, this fault of the declaration cannot prevail. But, on the other ground, that there is no allegation that this branch of the covenant sued on was not performed by the lessor before the reversion came to the defendants, it must be held that, with respect also to this branch of the case, the plaintiffs do not show a right of suit.

On the whole case, therefore, my conclusion is that the defendants are entitled to judgment on this demurrer.

DALRIMPLE and DEPUE, Justices, concurred.